UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-10100-CIV-KING/MCALILEY

THE KEY WEST TOURIST DEVELOPMENT
ASSOCIATION,

       Plaintiff,

v.

ZAZZLE, INC., a California Corporation and
WILLIAM D. KINZEY, JR.

       Defendants.

_____/

## REPORT AND RECOMMENDATION ON
## MOTION FOR DAMAGES AND ATTORNEYS' FEES

       This cause is before the Court on Plaintiff's Motion for Damages and Attorney Fees

[DE 41], referred to me by the Honorable James Lawrence King [DE 48]. This is an action

for trademark infringement in which final judgment was entered for Plaintiff and against *pro

se* Defendant William D. Kinzey, Jr. ("Kinzey"). Plaintiff now seeks an award of statutory

damages and attorneys' fees and costs against Kinzey pursuant to the Lanham Act, 15 U.S.C.

§§ 1117(a) - (c), and Florida Statute § 495.141. On June 29, 2012, I held an evidentiary

hearing on the motion, at which I took evidence and heard argument from both parties.

Having considered the motion, evidence and applicable law, I recommend that the motion

be granted in part.

## I.      Background

By way of background, Defendant Zazzle, Inc. operates a web site, www.zazzle.com, which offers for sale a wide range of goods, such as t-shirts, mugs, bags, and hats that users of the website can customize with their own designs.  Users of Zazzle's web site can both purchase their customized products, and offer them for sale to the public through the Zazzle online store.

In October 2010, Plaintiff, the Key West Tourist Development Association, filed suit against Zazzle, alleging that it offered for sale products displaying the Plaintiff's federal and state registered trademarks FANTASY FEST and HABITAT FOR INSANITY (the theme for the 2012 Key West Fantasy Fest), in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, Florida Statute § 495.151 and Florida common law.  [DE 1].  In short order, Zazzle and Plaintiff agreed to enter into a settlement agreement, which included Zazzle's providing information to Plaintiff that identified Kinzey as the originator of the infringing merchandise, and Plaintiff's agreement to dismiss Zazzle from the lawsuit.   [DE 53, pp. 88-90]. Thereafter, in January 2011, Plaintiff amended its complaint to add Kinzey as a defendant, alleging that Kinzey advertised for sale goods under the name "fantasyfest" and "Habitat for Insanity" on Zazzle's site, in violation of federal and state trademark statutes and Florida common law.  [DE 12].   Kinzey represented himself, *pro se*, in this action.

On April 5, 2011, not long after he was served with the Amended Complaint, Kinzey and Plaintiff's counsel met to discuss settlement.  Kinzey readily conceded that he would not

2

make further use of the disputed marks, but explained why he believed that his brief Zazzle offering did not violate the trademark laws.  Plaintiff's counsel offered to settle the case for the amount of its attorneys' fees, which Kinzey consistently stated he was unable to pay, and settlement discussions thus ended.[1]

The following January, Plaintiff and Kinzey filed a Joint Pre-Trial Stipulation, in which they stipulated to certain facts, including that Kinzey used marks, "identical and confusingly similar to Plaintiff's trademarks in advertising his services and goods to the public" on Zazzle's site, and used of a variation of Plaintiff's FANTASY FEST and HABITAT FOR INSANITY marks.  [DE 33, ¶¶ 41-42].  The parties additionally stipulated to the fact that only four infringing items were sold on the Zazzle site, on October 26, 2010, that were purchased by Plaintiff, and not by any other members of the public, and that Zazzle ceased selling the goods two days later.  [*Id.*, ¶¶ 53-55].[2]

Shortly thereafter, the Court ruled in Plaintiff's favor on an issue of law raised by Kinzey,[3] which was the only remaining issue in the matter.  [DE 38].  Plaintiff then moved the Court for entry of final judgment and an order of permanent injunction against Kinzey.

---

[1] Kinzey and Plaintiff's counsel - primarily Hugh Morgan - testified at length at the evidentiary hearing about their efforts to reach a settlement; some conflicting testimony was offered. The foregoing facts, however, were clearly established and essentially undisputed.

[2] The Stipulation also advised that Plaintiff would dismiss Zazzle, pursuant to a settlement agreement.

[3] At the pre-trial conference, Kinzey had explained to the Court that he believed that the holder of a trademark had to display the  symbol "TM" with the mark, in order to enforce the trademark.  [DE 35, 38].

3

[DE 39].

On February 13, 2012, the Court granted the motion and entered a final judgment and order of permanent injunction in favor of Plaintiff, and against Kinzey. [DE 40]. In doing so, the Court made various findings. Among them, it found that Plaintiff "owns valid and enforceable trademark registrations, trademarks, and service marks for FANTASY FEST and HABITAT FOR INSANITY."[4]  [*Id.*, ¶ E].  The Court determined that Kinzey "used a colorable imitation of the registered FANTASY FEST name and the HABITAT FOR INSANITY mark on the Zazzle web site." [*Id.*, ¶ 45].  It further found that Kinzey offered for sale ten categories of goods in connection with Plaintiff's marks on Zazzle's site, under his "fantasyfest" store and by doing so, infringed on Plaintiff's federal and Florida registered trademarks, service marks and trademark registrations. [*Id.*, ¶¶ B-F].  Ultimately, the Court held that Kinzey violated the Lanham Act in various ways, including that Kinzey willfully, intentionally and fraudulently used and infringed Plaintiff's federally registered trademarks and service marks, knowing such marks were counterfeit marks, as defined in 15 U.S.C. § 1116(d).[5]  [*Id.*, p. 7, ¶¶ I-K].  The Court permanently enjoined Kinzey from, *inter alia*,

---

[4]  The Court found that Plaintiff owns, and Kinzey infringed, three federal trademark registrations and four Florida trademark registrations.  [DE 40, ¶ F].

[5]  The Court further found that Kinzey willfully, intentionally and fraudulently infringed Plaintiff's Florida registered trademarks and service marks under Florida Statute § 495.151, willfully infringed Plaintiff's common law marks, diluted Plaintiff's FANTASY FEST marks in violation of Florida Statute § 495.151 and 15 U.S.C. § 1125, engaged in palming off and unfair competition in violation of state law, and used a false designation of origin or source under 15 U.S.C. § 1125. [DE 40, ¶¶ L-Q, W].

4

infringing and counterfeiting Plaintiff's marks. [*Id.*, pp. 10-11].

At the June 2012 evidentiary hearing, I heard testimony from Kinzey, Plaintiff's counsel Hugh Morgan and Joseph Albury, and Plaintiff's expert witness on attorneys' fees, Albert Kelley. I found all witnesses to be credible, regarding all matters necessary to the resolution of the pending motions. Following the hearing, Plaintiff and Zazzle filed a Joint Stipulation of Dismissal, advising the Court of their settlement; which included the agreement that each would bear its own fees and costs. [DE 54, ¶ 4]. On November 13, 2012, the Court dismissed all claims against Zazzle with prejudice. [DE 55].

As the prevailing party, Plaintiff now seeks $10,000 in statutory damages for trademark counterfeiting pursuant to the Lanham Act, 15 U.S.C. §1117(c), $79,747.31 in attorneys' fees under 15 U.S.C. §§ 1117(a) and (b)[6] and Florida Statute § 495.141,[7] and $497.79 in costs. [DE 41, 46, p. 3].

---

[6] Section 1117(b) allows for actual damages, and provides that a prevailing plaintiff may recover "a reasonable attorney's fee." Plaintiff has elected to proceed under section 1117(c), which allows statutory damages, as an alternative to actual damages. It would thus appear that the attorneys' fee provision in section 1117(a) - which allows an award of "reasonable attorney fees" to the prevailing party "in exceptional cases." *See K and N Engineering, Inc. v. Bulat*, 510 F.3d 1079, 1082 (9th Cir. 2007).

[7] Section 495.141 allows for an award of reasonable attorneys' fees "according to the circumstances of the case." Although Plaintiff invokes this attorneys' fee provision, it has not identified for the court any authority that has applied this standard, and the Court has found none. In my analysis of attorneys fees under the Lanham Act, I have considered the circumstances of this case, and apply that analysis to Plaintiff's claim under section 495.141.

## II.     Analysis

### A.     Statutory damages

In lieu of seeking actual damages, Plaintiff asks to recover from Kinzey $10,000 in statutory damages under 15 U.S.C. 1117(c).  [DE 41, ¶ 4].  Specifically, Plaintiff requests $1,000 per category of goods offered for sale, which it believes are ten in number, relying upon the Court's finding, in the Final Judgment, that Kinzey offered for sale on Zazzle.com the following items: (1) baby t-shirts; (2) kid's t-shirts; (3) ladies' t-shirts; (4) men's t-shirts; (5) pet shirts; (6) bags; (7) hooded sweatshirts; (8) hats; (9) bumper stickers; (10) mugs.  [DE 41, p. 5; DE 53, pp. 13-14].

In the case of a counterfeit trademark, such as this one, the Court may award statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1).[8]   "The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Cable/Home Communication Corp., v. Network Productions, Inc.*, 902 F.2d 829, 852 (11th Cir. 1990) (construing parallel language in statutory damages provision of the Copyright Act) (citations and quotation marks omitted)).  The Court's broad discretion is limited only by what it considers just. *Rolex Watch U.S.A., Inc. v. Lizaso-Rodriguez*, No. 1:11-cv-23986-

---

[8]   Damages increase to not more than "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" if the court finds that the use of the counterfeit mark was willful.  15 U.S.C. § 1117(c)(2).  Plaintiff does not ask to recover its fees under this provision.

PAS, 2012 WL 1189768, *4 (S.D. Fla. Apr. 9, 2012) (same); *Tiffany (NJ), LLC v. Dongping,*
No. 10-61214-CIV, 2010 WL 4450451, *6 (S.D.Fla. Oct. 29, 2010) (same).   Statutory
damages are intended to compensate a plaintiff for its losses, and to deter wrongful conduct.
*PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F.Supp.2d 1213, 1220-21 (S.D. Fla. 2004).
In its discretion the Court may "calibrate an appropriate damages award based on the
culpability of the defendant." *Mitchell Group USA LLC v. Xtreme Tools Int'l, Inc.*, No. 10-
21153-CV, 2011 WL 589997,*5 (S.D. Fla. Feb. 10, 2011) (citations and internal quotation
marks omitted).

The Lanham Act mandates statutory damages "per type of goods . . . sold, offered for
sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1).  Here, there were
four types of goods offered for sale: (1) apparel (shirts, sweatshirts and hats), (2) bags, (3)
bumper stickers, and (4) mugs.[9]  Thus, the minimum amount of statutory damages would be
$4,000 ($1,000 x 4).  On this record, it is just for the Court to award statutory damages in that
amount.

First, such an award will more than compensate Plaintiff for its actual loss of $62.50.
The infringing activity here was extremely short-lived and led to the sale of four items, all
of which Plaintiff purchased.  [DE 33, ¶¶ 53-55].[10]  Plaintiff has acknowledged that it
suffered "no actual monetary damages." [DE 53, p. 10].

---

[9] Notably, only four items were actually sold, and Plaintiff purchased them for the total cost
of $62.50.  [DE 33, ¶ 53].

[10] Only two days later, Zazzle removed the offending merchandise from its website.  [*Id.*].

This award will also fairly address Kinzey's culpability, and deter wrongful conduct. Kinzey testified, credibly, that he used the Fantasy Fest and Habitat for Insanity marks on the Zazzle website, in a manner that he thought was lawful. He intentionally changed Plaintiff's "FANTASY FEST" mark to "fantasyfest", removing the space between the words and using lowercase letters [DE 53, pp. 44-45], and did so after his search of the United States Patent Office's website and the State of Florida's database showed that it was not registered. [*Id.*, pp. 69-70]. As for the Habitat for Insanity mark, he found that it was not registered, and therefore he thought it could use it. [*Id.*, p. 45]. It is not surprising that a lay person would not appreciate that an unregistered mark could nevertheless be protected by common law. Kinzey testified that he thought he was "pushing the envelope" [*id.*, p. 69], but believed he was "acting within the legal realms of the law." [*Id.*, p. 45]. I found Kinzey to be credible. While I do not condone Kinzey's behavior, he had a genuine, although misguided, belief that his Zazzle offerings were lawful.

As is set forth later in this Report, Kinzey has no assets with which to pay anything more than a minimal judgment. A $4,000 award of statutory damages will be extremely burdensome of Kinzey, and this award is, without doubt, equivalent to a very sizable award entered against someone with financial means.[11]   Accordingly, I find that the recommended award will serve to deter future violations. For these reasons, I recommend the Court award

---

[11] It is far more common for trademark infringement defendants to be sophisticated business enterprises that exploit established trademarks at considerable profit; in those cases a sizable statutory damages award would be expected. This is not such a case.

Plaintiff $4,000 in statutory damages.

I now turn to Plaintiff's request for fees and costs.

**B.     Attorneys' fees**

As already noted, Plaintiff asks to recover its fees under 15 U.S.C. § 1117(a).  [DE 41, pp. 2-3].  Specifically, it asks that Kinzey be ordered to pay a total of $79,747.31 for the attorneys' fees for three Plaintiff's law firms: $53,069.75 for the Law Office of Hugh Morgan, $17,540.06 for the Hanor Law Firm, and $9,137.50 for the Law Office of Joseph Albury.  [DE 46, p. 3].

**1.     Entitlement to attorneys' fees**

Under section 1117(a) of the Lanham Act, attorneys' fees may be awarded only in "exceptional cases."  An exceptional case is one in which the infringing party acts in a "malicious, fraudulent, deliberate, or willful manner."  *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994) (quoting H.R.Rep. No. 93-524, 93rd Cong. (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7133) (internal quotations marks omitted)); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001) (same).[12] It is also one in which the infringing party has engaged in fraud or acted in bad faith.  *Tire Kingdom, supra.*  When a court finds exceptional circumstances, it has discretion to decide

---

[12]  In *Tire Kingdom* and other decisions, the Eleventh Circuit evidently has misstated the standard for an exceptional case as one characterized as "malicious, fraudulent, deliberate *and* willful", erroneously using the conjunctive.  253 F.3d at 1335 (emphasis added).  The Court in *Burger King* relied upon and accurately quoted the legislative history of the Lanham Act, which uses the disjunctive.

whether to order fees. *Burger King*, 15 F.3d at 168; *Dieter v. B&H Indus. of Southwest Fla., Inc.*, 880 F.2d 322, 329 (11th Cir. 1989); *Four Green Fields Holdings, LLC v. Four Green Fields, An Irish Pub, Inc.*, No. 8:10-CV-2800-T-27EAJ, 2011 WL 5360143, *1 (M.D. Fla. Oct. 17, 2011).

This Court has found in the Final Judgment that Kinzey willfully, intentionally and fraudulently infringed on Plaintiff's trademarks [*see* DE 40], and in so doing has established that this case qualifies as "exceptional." Plaintiff thus qualifies for an award of its fees. For the reasons explained below, I recommend that the Court exercise its discretion to award Plaintiff attorneys' fees in an amount considerably less than what it requests.

### 2.    Reasonable fees

The Supreme Court has set out a basic template for determining the amount of a reasonable attorney's fee that is "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983). The Court must start by multiplying the number of hours reasonably expended by a reasonable hourly rate, to determine a "lodestar" amount. *Id.* at 433; *see also Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).   In its calculation of the lodestar amount, the Court may consider any of the twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[13]   *Hensley*, 461 U.S. 434 n.9; *Farley v.*

---

[13]  These factors include:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the

*Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1340 (11th Cir. 1999); *First Fashion USA, Inc. v. Best Hair Replacement Manufacturers, Inc.*, No. 09-60938-CIV, 2010 WL 1610331, *3 (S.D. Fla. Apr. 20, 2010). To the extent the Court has not already considered any of the *Johnson* factors in arriving at the lodestar, the Court may rely upon them to adjust the lodestar. *Hensley*, 461 U.S. at 435-36; *Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n. 1 (11th Cir. 2006). The fee applicant bears the burden of establishing his entitlement to an award and documenting appropriate hours and hourly rates. *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436)).

### a.    Reasonable hourly rates

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experiences and reputation. *Norman*, 836 F.2d at 1299; *Coy v. Allstate Floridian Ins. Corp.*, No. 2:05-cv-103-FtM-34DNF, 2007 WL 1732098, *8 (M.D. Fla. June 14, 2007). The applicant must produce satisfactory evidence that the requested rate is consistent with prevailing market rates. *Norman*, 836 F.2d at 1299. Generally, acceptable proof of the market rate may consist of

---

amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

testimony and direct evidence from other legal practitioners in the relevant legal community who are familiar with the type of legal service provided and the prevailing market rate for such work. *Id.* Absent sufficient evidence, the Court, however, may rely upon its own knowledge and expertise to determine a reasonable fee. *Id.* at 1303.

In support of its motion, Plaintiff submitted records of hours billed by the attorneys and support staff who worked on this litigation, that can be summarized as follows: (1) The Law Office of Hugh J. Morgan, billed a total of $53,069.75 in fees at a rate of $425 per hour for Morgan and $85 per hour for his paralegal, Scarlet Bodmer [DE 46-1, pp. 6-7]; (2) the Hanor Law Firm, billed a total of $17,540[14] in fees at a rate of $300 per hour for Charles Hanor and a rate of between $100 and $200 per hour for various other support staff and/or attorneys [DE 46, p. 3; 46-1, pp. 8-26]; and (3) the Law Office of Joseph Albury, billed a total of $9,137.50 in fees at a rate of $250 per hour for Albury. [DE 46, p. 3; DE 46-1, pp. 27-35].[15] Hugh Morgan served as litigation counsel, Charles Hanor consulted on intellectual property law, and Joseph Albury was Plaintiff's local counsel who handled its trademark registration filings. [DE 53, pp. 82-83].

### 1.    The Morgan firm

---

[14] According to Kelley's affidavit, Hanor's bills came to $13,032.50, rather than $17,540.06, as mentioned in Plaintiff's summary of fees. [*Compare* Pltf. Ex. 2 at p. 3 *with* DE 46, p. 3].

[15] Plaintiff has not yet paid Messrs. Morgan's or Albury's fees. Rather, those attorneys and Plaintiff have agreed to await the outcome of this fee petition, after which, Morgan advised, they will reach agreement for payment of a "reasonable attorney's fee based on the circumstances of this case." [DE 53, p. 99].

Morgan billed his client at an hourly rate of $425 and his paralegal at $85 per hour. [DE 46, p. 7]. In support of these hourly rates, Plaintiff submitted Morgan's CV [Pltf. Ex. 1][16] and Kelley's affidavit and testimony. [Pltf. Ex. 2]. Kelley avers that the "current customary rate in Key West is between $300-$350 per hour," but that the rate "can increase for experience and specialized knowledge." [Pltf. Ex. 2, p. 2]. According to Kelley, Morgan's hourly rate of $425 per hour is reasonable given his forty-four years of experience. [DE 53, p. 108; Pltf. Ex. 2, p. 2]. Without taking away from Morgan's skill and reputation - he is an outstanding lawyer - for the reasons set forth, I recommend that his hourly rate be reduced.

In assessing the reasonableness of Morgan's rate, I consider a few of the *Johnson* factors. This matter was neither novel nor complex, Kinzey represented himself, and Plaintiff's counsel did not need to be highly skilled, or devote considerable time, to bring the case to a conclusion. There was only one disputed issue of law (raised by Kinzey) and the parties stipulated that there were no contested factual issues. Morgan did not have to bring specialized knowledge to the matter, as he relied upon Hanor for *his* specialized knowledge of trademark law. Considering these factors, Kelley's opinion on the customary rates in Key West, and this Court's own judgment and expertise, I find that $350 is a reasonable hourly rate for Morgan in this matter.

As for Bodmer's rate, Plaintiff has not provided the Court with any information as to

---

[16] The exhibits submitted by the parties at the hearing are found at DE 56.

her background, skills, and education and has not produced any evidence that the requested rate is in line with prevailing market rates for a paralegal in this District. Another division of this Court, however, has found that "[a]bsent any information regarding [her] experience . . . the prevailing rate for a paralegal in this District is $100.00 per hour." *First Fashion USA*, 2010 WL 1610331 at *4 (citing cases) (quotation marks omitted). Plaintiff asks that Bodmer be compensated at a lower hourly rate - $85 - which I find reasonable.

### 2.    The Hanor firm

As for the Hanor Law Firm, Kelley offers his conclusory opinion that Hanor is a "well-respected Texas attorney who is very knowledgeable in intellectual property rights," whose $300 per hour fee he considers reasonable, and consistent with rates in Key West. [Pltf. Ex. 2, pp. 2, 4]. Plaintiff has not has not, however, provided the Court with specific information about Hanor's legal experience, skills and education and has not sufficiently explained why Hanor is entitled to this rate. Hanor's associate, Bernie Kray, was billed at $175 per hour. [DE 46-1, p. 24; DE 53, p. 95]. Again, Plaintiff has not provided the Court with satisfactory information about Kray's education, skills and experience to support the reasonableness of his rate.

Absent satisfactory evidence from Plaintiff to support the reasonableness of these rates, the Court uses its own judgment and expertise in making this determination, and finds that $300 is a reasonable hourly rate for Hanor and $175 is a reasonable hourly rate for Kray.

Finally, Plaintiff claims fees for other staff members of the Hanor Firm, namely Aurora Martinez, Justin Harris, Jeannine Vasquez and Monique Chavez. [DE 46-1, p. 12, 24]. Plaintiff has not identified what positions these individuals hold within the firm, leaving the Court unable to apply its own judgment to evaluate these fees. Thus, I recommend that the Court deny Plaintiff's request for any fees billed by Aurora Martinez, Justin Harris, Jeannine Vasquez and Monique Chavez. *See U.S. ex rel. ATC Distribution Group, Inc. v. Ready-Built Transmissions, Inc.*, No. 03 Civ. 2150 (GWG), 2007 WL 2522638, *3 (S.D.N.Y Sept. 7, 2007) (where moving party does not disclose any information regarding the qualifications, experience levels, and positions held by professionals performing services, courts have denied fee applications).

### 3.    Joseph Albury

Finally, the hourly rate charged by Albury is $250. As with Hanor, Plaintiff has not sufficiently explained why Albury is entitled to this hourly rate and has not provided the Court with specific evidence about his legal experience, skills and education. That being said, using the Court's own judgment and expertise, I find that $250 is a reasonable hourly rate for Albury in this action.

### b.    Hours reasonably expended

The second half of the lodestar equation is the hours reasonably expended. The moving party bears the burden of providing the Court with sufficiently detailed records, so that the Court can assess the time claimed for each activity. *Norman*, 836 F.2d at 1303. Fee

applicants must exercise "billing judgment," meaning they must exclude from their petition hours that would be unreasonable to bill to a client, and therefore to one's adversary, irrespective of the skill, reputation or experience of counsel. *Id.* at 1301. Excessive, redundant, or otherwise unnecessary hours should be excluded from the calculation. *Hensley*, 461 U.S. at 434; *Norman*, 836 F.2d at 1301. For its part, the Court must exercise its own judgment when reviewing a claim. *Norman*, 836 F.2d at 1301-2.

I have carefully reviewed counsels' invoices and recommend that the hours billed be significantly reduced. I first address the hours expended by the Morgan firm, before turning to those billed by Hanor and Albury.

### 1.   Hours expended by the Morgan firm

Morgan billed a total of 123.45 hours and Bodmer billed 7.1 hours. [DE 46-1, p. 7]. First, as to Bodmer's fees, I recommend that none of her fees be shifted to Kinzey. Paralegal fees are recoverable "only to the extent that the paralegal performs work traditionally done by an attorney." *Scelta v. Delicatessen Support Servs. Inc.*, 203 F.Supp.2d 1328, 1334 (M.D. Fla. 2002) (internal quotation marks and citation omitted). Bodmer billed for scanning and copying documents, filing and processing the complaint and other pleadings, processing, filing and preparing summonses and communicating with process servers. [DE 46-1, pp. 1-2]. These tasks, which do not require an attorney, are attributable to clerical work. Clerical work is not compensable as attorneys' fees. *See Tiara Condo. Ass'n., Inc. v. Marsh USA, Inc.*, 697 F.Supp.2d 1349, 1369 (S.D. Fla. 2010) (tasks of clerical nature not compensable);

16

*Scelta*, *supra* (work that is clerical or secretarial in nature, such as gathering, copying, mailing and refiling documents, is not separately recoverable).   Accordingly, these fees should not be shifted to the Plaintiff.

Turning to Morgan's hours, I recommend that they be reduced due to the use of block billing, time devoted to clerical tasks and to the Zazzle settlement, and excessive hours. First, a close review of Morgan's bills show the extensive use of block billing.   This practice "makes it difficult to establish whether the amount of time spent on any one task was reasonable." *Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079-CIV, 2008 WL 2688117, *11 (S.D. Fla. July 1, 2008).   *See Kearney v. Auto-Owners Ins. Co.*, 713 F.Supp.2d 1369, 1378 (M.D. Fla. 2010) (same).   For example, on December 28, 2011, Morgan billed a total of 4.4 hours as follows:

> Directions to Legal Assistant re: preparation of Pre-Trial Stipulation based on copy of Local Rule 16.   Received jury instruction drafts from Charles Hanor – Instructions to Legal Assistant re: original and drafting same.   Re-drafted and final of Zazzle release.   E-mails to Steve Binhak re: above.[17]   Organized documents for use in drafting points.

[DE 46-1, pp. 3-4].   On December 30, 2011, he billed 5.3 hours for

> Researched law in support of legal issues for PT's.   Telephone conf. with Linda O'Brien Market Share re: witnesses and evidence.   Telephone conf. with Steve Binhak re: PT's and/or settlement.   Drafted portion of uncontested parts. Receive and review e-mails from co-counsel Hanor re: Law of Infringement. E-mail to Charles Hanor cc to Steve Binhak and Joe Albury - forwarded my edits/drafts of two additional e-mails to Charles Hanor re: questions of Law and edits to Kinsey - Zazzle portion of Pre-trial Stipulation.   Worked with

---

[17]   Steve Binhak was counsel for Zazzle.

17

Legal Assistant to obtain Key West Citizen announcement of Habitat for
Insanity 2010[.]

[*Id.*, p. 4]. Similarly, he billed 5.3 hours on January 5, 2012 for

Instructions to legal assistant. Edits and drafts to Pre Trial Stipulation and jury
instructions. Telephone conference with Anna at MarketShare. Office
conference with Anna from MarketShare to go over exhibits. (3) Telephone
conferences with Zazzle. Receipt and review witness list vis email. Office
conference with Kinsey. Reviewed Pre Trial Stipulation. Signed same.
Travel to courthouse to file Pre Trial Stipulation.

[*Id.*, p. 5]. The majority of Morgan's entries are block billed, similar to those quoted above.

Each of these block billed entries list a variety of tasks and the Court can only guess the time

devoted to each task.

A number of other entries include time attributable to non-compensable clerical work.

For instance, his January 10, 2011 entry includes time spent processing, issuing and taking

a summons to court, calling a process server, and making copies. [DE 46-1, p. 2]. On

December 27, 2011, he billed for time making copies. [*Id.*, p. 3]. And, on January 5, 2012,

he billed time for traveling to court to file the pre-trial stipulation. [*Id.*, p. 5]. Plaintiff can

not shift to Kinzey time devoted to clerical tasks. *See Tiara Condo. Ass'n*, 697 F.Supp.2d

at 1369; *Scelta*, 203 F.Supp.2d at 1334.

Morgan's time entries include his efforts to reach a settlement with the other

Defendant, Zazzle. For example, he billed time for drafting, editing and reviewing the

settlement documents and sending and receiving e-mails to and having telephone conferences

with Zazzle's attorney, Steve Binhak, regarding settlement. [*See* DE 46-1, pp. 2-5, entries

18

for 8/2/11, 12/28/11, 12/30/11, 1/9/12, 1/10/12, 1/11/12, 2/8/12, 2/9/12 entries]. In its

settlement with Zazzle, Plaintiff agreed to bear its own attorneys' fees. [DE 54, p. 2]. Here,

it would be inequitable for it to shift those fees to Kinzey. *See Council for Periodical*

*Distrib. Ass'n v. Evans*, 827 F.2d 1483, 1487-88 (11th Cir. 1987) (courts have discretion on

how to divide liability for fees among defendants in doing so, should try "to achieve the most

fair and sensible solution possible."); *U.S. v. Patrol Servs., Inc.*, 202 Fed. Appx. 357, 362

(11th Cir. 2006) (same). Because the work attributed to the Zazzle settlement is block billed

with other tasks, it is impossible to segregate those hours from other hours devoted to

litigation with Kinzey.

Finally, I conclude that in the context of shifting fees to Kinzey, the 123 hours Morgan

billed is excessive. This was not a complicated trademark infringement case; the case

resulted in a quick settlement with one defendant and very little litigation with Kinzey, who

was unrepresented. The marketing of the infringing product was immediately shut down

before any sales to the public, and Kinzey credibly assured that he would abandon his

misguided effort. It is highly likely that Plaintiff could have settled the matter with Kinzey

at its inception, had it not insisted that Kinzey pay its attorneys' fees in full. Had Plaintiff

done so, it would have satisfied its obligation to police its trademarks, and would have

avoided costly litigation. While Plaintiff certainly was not obligated to settle the case, it

chose to pursue the litigation knowing that Kinzey was without assets to pay even modest

attorneys' fees. And, even though Kinzey entered into a pre-trial stipulation with agreed

19

facts, and raised only one issue of law that the Court quickly resolved, Plaintiff's legal fees quickly - and not surprisingly - piled up. On this record, it would be inequitable to expect Kinzey to pick up the tab of Morgan's 123.45 hours litigating this matter.

For all of these reasons I recommend that Morgan's fees be reduced. I have carefully reviewed Morgan's billing records, that document 123.45 hours billed over an eighteen-month period. With extensive billing records like these, the Court has the option of reducing fees entry-by-entry or, making an across-the-board reduction. *See Hepsen v. J.C. Christensen and Assoc., Inc.*, 394 Fed. Appx. 597, 600 (11th Cir. 2010) (the court must choose one methodology); *Ruderman v. Washington Nat'l Ins. Corp.*, 465 Fed. Appx. 880, 882 (11th Cir. 2012) ("when fee documentation is voluminous, an hour-by-hour review is 'impractical and a waste of judicial resources' and an across-the-board percentage cut is permitted.") (citation omitted).

An across-the-board reduction is most appropriate here, and I believe it can fairly account for excessive, unnecessary and non-compensable attorneys' fees; I recommend that the hours billed by Morgan be reduced by 45%. Reducing the hours billed (123.45) by 45% results in 67.90 hours. Multiplying those hours by the reasonable hourly rate ($350) results in $23,765 in fees.

### 2.      Hours expended by Hanor's firm

As noted earlier, I recommend that, other than the time billed by Hanor and his associate, Kray, Plaintiff recover none of the hours billed by other employees of this firm.

20

Hanor billed a total of 34.9 hours at a reasonable rate of $300 per hour, for a total of $10,470 in fees, and Kray billed a total of 13.7 hours at a reasonable rate of $175 per hour, for a total of $2,397.50 in fees.

I have carefully reviewed Hanor's invoices and find that a portion of his time was spent preparing and reviewing the Zazzle settlement. [DE 46-1, pp. 17 (12/9/10 entry), 19 (3/14/11 entry), 20 (8/15/11 entry), 22 (1/13/12 entry). It would be inequitable for Plaintiff to recover from Kinzey fees incurred reaching the Zazzle settlement. Hanor's invoices are over fourteen (14) pages in length and contain multiple time entries by various employees. [DE 46-1, pp. 8-26]. As with Morgan's bills, I conclude that an across-the-board reduction of Hanor's extensive bill is most appropriate. I recommend that Hanor's time be reduced by 10% to account for any time solely attributable to the Zazzle settlement. Reducing the hours billed by Hanor (34.9) by 10% results in 31.41 hours. Multiplying those hours by the reasonable hourly rate ($300) results in $9,423 in fees.

As for Kray, I have reviewed his time entries, which are relatively few in number. Most of his time was spent drafting and editing the brief filed on the one issue of law raised by Kinzey. [DE 46-1, p. 22]. I find that all of Kray's hours were reasonably expended. Accordingly, all of his fees, totaling $2,397.50, are recoverable.

### 3.    Hours expended by Albury

Albury billed 36.55 hours at a reasonable rate of $250 per hour. I recommend a significant reduction of his time. I have reviewed his invoices in detail and find that most

21

of the time he billed was unnecessary and duplicative. While Albury is undoubtedly a fine attorney, I can not discern the need for him to co-counsel this matter. This litigation was handled by Morgan locally, with Hanor serving as a consultant, in Texas, on trademark law. The vast majority of Albury's time was spent receiving and reviewing emails, documents and pleadings from Morgan, Hanor, Bodmer, and other individuals. [DE 46-1, pp. 27-35]. Plaintiff's expert noted, "the majority of [Albury's] work was keeping track of the status of the case so he could assist in hearings, conferences and meetings." [Pltf. Ex. 2, p. 3]. To have a third attorney assist on a straightforward, non-complex matter such as this was not necessary. I find that the time spent by Albury on this litigation was largely unnecessary and duplicative of work performed by Morgan and Hanor.

Once again, I find that an across-the-board reduction is most appropriate here, where Albury's bills total nine (9) pages, each with multiple entries. I recommend an 85% reduction of Albury's fees. Reducing Albury's hours (36.55) by 85% results in 5.5 hours. Multiplying those hours by his reasonable hourly rate ($250) results in $1,375 in fees.

To review, the presumptively reasonable fees in this case amount to the following:

| Attorney | Reasonable Hourly Rate | Reasonable Hours | Total |
|----------|------------------------|------------------|-------|
| Hugh Morgan | $350 | 67.90 | $23,765 |
| Charles Hanor | $300 | 31.41 | $9,423 |
| Bernie Kray | $175 | 13.7 | $2,397.50 |
| Joseph Albury | $250 | 5.5 | $1,375 |
| **TOTAL** | | | **$36,960.50** |

###### c.    Adjustment to the lodestar

As noted, once the lodestar is determined, a court may adjust it to reach a more appropriate attorneys' fee award, based on any *Johnson* factors that have not already been accounted for in determining the lodestar. *Hensley*, 461 U.S. at 434 & n.9; *Ass'n of Disabled Americans*, 469 F.3d at 1359 & n.1. Here, the Court has already accounted for the relevant *Johnson* factors, in its formulation of the lodestar.

The Eleventh Circuit has, in certain contexts, recognized an additional factor that may be considered when adjusting the lodestar:  the losing party's financial resources. *See Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 917 (11th Cir. 1982) (Title VII case); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1544 (11th Cir. 1985) (Fair Labor Standards Act case); *see also Scelta v. Delicatessen Support Servs. Inc.*, 203 F.Supp.2d 1328, 1336 (M.D. Fla. 2002) (Title VII case); *Spears v. Meeks*, No. 2:10-CV-671-WKW, 2011 WL 3703966, *3 (M.D. Ala. Aug. 24, 2011) (42 U.S.C. § 1983 case); *Pugach v. M & T Mortg. Corp.*, 564 F.Supp.2d 153, 163 (E.D.N.Y. 2008) (False Claims Act case); *Mitek Holding, Inc. v. Arce Engineering Co, Inc.*, 198 F.3d 840, 842-843 (11th Cir. 1999) (Copyright Act).

The Eleventh Circuit has noted that, "[e]quitable considerations appropriately guide the determination of fee awards authorized by federal statute, and the financial resources of the paying party are one such consideration." *Durrett*, 678 F.2d at 917; *see also Pugach*, 564 F.Supp.2d at 163 ("'because fee awards are at bottom an equitable matter . . . courts should not hesitate to take the relative wealth of the parties into account.'") (citation omitted)).  In

23

applying this factor to the lodestar figure, the Court "should ascertain whether, in light of the [losing party's] ability to pay, a reduced assessment would fulfill the [statutory] deterrent purpose . . . without subjecting the [losing party] to financial ruin." *Durrett,* 678 F.2d at 917; *Scelta*, 203 F.Supp.2d at 1336 (same); *Pugach*, 564 F.Supp.2d at 163 (same).  In the context of the Copyright Act, the Court has recognized that an economic disparity between the parties may be considered, but should not be the only consideration.  *Mitek*, 198 F.3d at 842-43 (Court must make an award of fees that furthers the goal of the Copyright Act).

On this record, I recommend that the Court substantially adjust the lodestar, to account for Kinzey's impecunious financial status.  Kinzey credibly testified that he works as an ecotourism guide in Key West and earns approximately $24,000 per year; this is his sole source of income.  [DE 53, p. 57].  He has a few hundred dollars in his bank account and his assets consist of a twenty-two year old car, a bicycle and an acoustic guitar.  [*Id.*, pp. 58-59].  He does not own a home or any real property.  [*Id.*, p. 58].  As for his liabilities, Kinzey pays approximately $775 per month in rent and has unpaid medical bills due to his lack of health insurance.  [*Id.*, p. 59].  He also owes an undisclosed sum to the Internal Revenue Service for tax liabilities incurred in previous years; the amount of his liability was in the process of being determined at the time of the hearing.  [*Id.*, pp. 59-60].

It is clear that Kinzey is in financial straits.  If the Court imposes the recommended statutory damages, Kinzey will be liable for $4,000 in damages (even though Plaintiff had only $62 in actual damages).  This alone, will be a hardship for Kinzey, who has a very

24

modest annual income, no meaningful assets, and what could amount to substantial tax liabilities. Shifting an attorneys' fee award of $36,960 to Kinzey would undoubtedly subject him to financial ruin, as that amount well exceeds his annual income. Kinzey does not present a risk of future trademark violations, thus an attorneys' fee award is not needed to deter him. A lesser award - which will nevertheless be burdensome for Kinzey - would fulfill the statutory purpose of deterring other potential infringers.

Accordingly, I recommend that the lodestar be adjusted to account for Kinzey's very limited financial resources and avoid his financial ruin; I recommend that an across-the-board adjustment of 75%. Adjusting the lodestar amount ($36,960.50) by 75%, results in an attorneys' fee award of $9,240.13.

### C.    Costs

Last, Plaintiff also asks to be reimbursed $487.79 in costs. [DE 46-1, p. 6]. Under the Lanham Act, Plaintiff is entitled to recover its costs. 15 U.S.C. § 1117(a). Rule 54(d) provides that a prevailing party is entitled to recover its costs as a matter of course, while 28 U.S.C. § 1920 enumerates the costs that may be taxed. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-2 (1987); 28 U.S.C. § 1920.

Plaintiff seeks reimbursement for copy costs, process server fees, postage, the cost of filing a certified trademark registration, and the cost of filing Hanor's pro hac vice admission.[18] [DE 46-1, p. 6; DE 5]. I recommend that the service fees be shifted to Kinzey

---

[18]   Plaintiff has not submitted any invoices to support its request.

25

but that Plaintiff pay the remaining costs.

First, Plaintiff seeks a total of $130 in private process service fees as follows: $90 for "process service on William D. Kinsey" and $40 for "process service Kinsey - Zazzle, Inc." [DE 46-1, p. 6].[19] Generally, fees of the marshal may be taxed as costs. 28 U.S.C. § 1920(1). Service by a private process server is compensable so long as the rates do not exceed the cost of having the U.S. Marshals Service effect service. *EEOC v. W & O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000); *James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 649 (S.D. Fla. 2007); *see also* 28 U.S.C. § 1921(a)(1)(B) (court may tax marshals' fees for serving subpoena or summons). The Marshals Service may collect up to $55 per hour for each item served, plus travel costs and other out-of-pocket expenses. *See* 28 C.F.R. § 0.114(a)(3). To the extent Plaintiff's request for service fees exceeds the minimum charged by the Marshals Service, I recommend that the Court limit the cost for that item to $55, the minimum charged by the Marshals Service, for a total recovery of $95 ($55 + $40).

Next, under section 1920(4), "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" are taxable. 28 U.S.C. § 1920(4); *see For Play Limited v. Bow to Stern Maintenance, Inc.*, No. 05-22002-CIV-KING, 2006 WL 3662339, *10 (S.D. Fla. Nov. 6, 2006). However, copies made merely for counsel's convenience are not taxable and Plaintiff, as the prevailing party, bears the burden of demonstrating that the copies were necessarily obtained for use in this

---

[19] These fees were incurred in February and March 2011, during the time Plaintiff was attempting to serve Kinzey with the Amended Complaint.

case. *For Play Limited*, 2006 WL 3662339 at *10. Plaintiff has neglected to support its request for these costs with any invoices documenting these expenses. Absent an invoice detailing the requested copy costs, I cannot determine whether the copies were necessarily obtained for use in this case or merely incurred for counsel's convenience. Accordingly, these undocumented costs should not be taxed to Kinzey.

To the extent Plaintiff requests reimbursement for postage and the costs of a certified trademark registration, those costs are not recoverable under section 1920. *See generally* 28 U.S.C. § 1920; *see Robinson v. Alutiq-Mele, LLC*, 643 F.Supp.2d 1342, 1354 (S.D. Fla. 2009) (shipping and handling costs are not recoverable). Finally, the cost of Hanor's *pro hac vice* admission is not recoverable under section 1920. *Covington v. Arizona Beverage Co., LLC*, No. 08-21894-CIV, 2011 WL 810592, *3 (S.D. Fla. Jan. 25, 2011) (citing cases).

In sum, I recommend that Plaintiff recover a total of $95 in costs.

## III.    Recommendation

For all of the foregoing reasons, I **RECOMMEND** that Plaintiff's Motion for Damages and Attorney Fees [DE 41], be **GRANTED in part**, and that Plaintiff recover a **total of $13,335.13 in damages, fees and costs** as follows:

1.    Statutory damages = $4,000

2.    Attorneys' fees = $9,240.13

3.    Costs = $95

## IV.     Objections

Pursuant to Magistrate Rule 4(a), the parties may file written objections to this Report and Recommendation with the Honorable James Lawrence King **within 14 days of the date of this Report and Recommendation**.  Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein.  *See RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir.1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY RECOMMENDED in chambers at Miami, Florida, this 9th day of January, 2013.

CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable James Lawrence King

Counsel of record

William D. Kinzey, Jr.
714 Emma St., front
Key West, FL 33040
and
P.O. Box 4442
Key West, FL 33041